IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES E. LAWRENCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 08-265J |
| ) | |
| MICHAEL J. ASTRUE, ) | JUDGE GIBSON |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

GIBSON, J.

### I. SYNOPSIS

This matter comes before the Court on the parties' cross-motions for summary judgment. Document Nos. 13 & 19. The Court has jurisdiction in this case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Plaintiff's motion for summary judgment will be denied, the Defendant's motion for summary judgment will be granted, and the administrative decision of the Commissioner of Social Security ("Commissioner") presently under review will be affirmed.

### II. PROCEDURAL HISTORY

Plaintiff Charles E. Lawrence ("Lawrence") applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. § 401-433, 1381-1383(f)] on January 7, 2005, alleging disability as

1

of May 22, 1999. R. p. 10. The claims were denied by the state agency on July 5, 2005. R. p. 52. Lawrence responded on August 26, 2005, by filing a timely request for an administrative hearing. R. p. 61. On August 3, 2006, a hearing was held in Altoona, Pennsylvania, before Administrative Law Judge William W. Berg (the "ALJ"). R. p. 848. Lawrence, who was represented by counsel, appeared and testified at the hearing. R. pp. 861-879. Testimony was also taken from Irene Montgomery ("Montgomery"), an impartial vocational expert. R. pp. 853-859. In a decision dated November 22, 2006, the ALJ determined that Lawrence was not entitled to benefits under the Act. R. pp. 7-25. The Appeals Council denied Lawrence's request for review on September 25, 2008, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. p. 2. Lawrence commenced this action on November 20, 2008, seeking judicial review of the Commissioner's decision. Document No. 1. Lawrence and the Commissioner filed motions for summary judgment on April 22, 2009, and September 8, 2009, respectively. Document Nos. 13 & 19. These motions are the subject of this memorandum opinion.

### III. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a

> determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. DISCUSSION

In his decision, the ALJ determined that Lawrence was "disabled" within the meaning of the Act, but that he was not entitled to benefits thereunder because he would not have been disabled if he had stopped using alcohol. R. pp. 11, 22. The Contract With America Advancement Act of 1996 ("CWAAA") amended Titles II and XVI to provide that "an individual shall not be considered to be disabled" under the Social Security Act if "alcoholism or drug addiction" would be "a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Lawrence's applications for benefits under the Act were denied on the basis of the CWAAA.

The evidence established that Lawrence had not engaged in substantial gainful activity subsequent to his alleged onset date. R. p. 11. Lawrence was found to be suffering from

5

cervicalgia, degenerative disc disease of the thoracic spine, a chronic pain syndrome, alcoholic hepatitis, fatty liver disease, a depressive disorder, a bipolar disorder, a panic disorder with agoraphobia, a post-traumatic stress disorder, a personality disorder, a history of a head injury with loss of consciousness, a history of alcohol dependence, hypertension, hyperlipidemia and a tobacco use disorder. R. p. 11. Although his hypertension, hyperlipidemia and tobacco use disorder were found to be "non-severe," his remaining impairments were deemed to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). R. pp. 11-12. The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments"). R. p. 12. In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Lawrence's residual functional capacity as follows:

> Based on the foregoing, the Administrative Law Judge concludes that, in the absence of alcohol, the claimant's impairments, in combination with his subjective complaints, preclude work requiring lifting or carrying more than 10 pounds frequently or 20 pounds occasionally, more than occasional balancing, stooping, kneeling, crouching, crawling or climbing, more than occasional overhead work or movements of the head, more than simple, routine, repetitive job tasks, more than occasional interaction with supervisors, co-workers or the general public, any exposure to the stress associated with a fast-paced production environment, more than simple, work-related decisions or, in general, more than relatively few work place changes, or any involvement with the handling, sale or preparation of alcoholic beverages, but they do not prevent the claimant from performing a wide range of work at the light exertional level.

R. p. 18. Lawrence was born on November 6, 1957, making him forty-one years of age as of his alleged onset date and forty-nine years of age as of the date of the ALJ's decision. R. pp. 11, 863. He had a high school education and an associate's degree from the Altoona School of Commerce.

R. pp. 863-864. Based on the applicable residual functional capacity and vocational assessments, the ALJ determined that Lawrence could not return to his past relevant work as a lumber yard laborer, railroad laborer, door-to-door salesman or telemarketer. R. p. 20. Nonetheless, he concluded that, in the absence of alcohol, Lawrence could work as a weigher/scales operator, a small parts assembler, or an inspector. R. p. 21. Montgomery's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(A). R. pp. 857-858.

In support of his motion for summary judgment, Lawrence essentially advances three arguments.[1] First, he contends that the ALJ erred in finding that his impairments did not meet or medically equal an impairment found in the Listing of Impairments. Document No. 14, pp. 6-8. Second, he argues that the ALJ's residual functional capacity assessment was defective. *Id.*, pp. 8-13. Third, he asserts that it was error for the ALJ to find that his alcohol use was a contributing factor material to his disability. *Id.*, pp. 13-17. The Court will address these arguments in sequence.

At the third step of the sequential evaluation process, an administrative law judge must do more than simply state that the claimant's impairments do not meet or medically equal a Listed Impairment. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-120 (3d Cir. 2000). A

---

[1] Although Lawrence purports to raise five arguments, some of them overlap to the point that they are virtually indistinguishable. For instance, he argues that the ALJ erred in failing to consider the combined effects of his impairments, and in finding that he could perform work at the light exertional level. Document No. 14, pp. 8-13. These arguments are duplicative of each other, since they both relate to the ALJ's residual functional capacity assessment. Lawrence also contends that the ALJ erred *both* in finding that alcohol use was a contributing factor material to his disability *and* in finding that he would not be disabled if he were not abusing alcohol. *Id.*, pp. 13-17. These arguments

conclusory statement without any supporting explanation or discussion warrants a remand for further proceedings, since it renders meaningful judicial review of the determination impossible. *Id.* Nevertheless, in the absence of probative evidence that a claimant's impairments meet or medically equal a particular Listing, an administrative law judge's duty is satisfied where he or she identifies the specific Listings under consideration while evaluating the evidence, thereby enabling a reviewing court to accurately trace the path of his or her reasoning. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007). A plaintiff wishing to contest the Commissioner's step-three determination before a reviewing court must either identify a pertinent Listing that was wrongfully ignored or point to evidence that, if properly considered, would have yielded a finding of disability under one of the Listings considered by the administrative law judge. *Id.*

In his brief, Lawrence claims that the ALJ should have found him to be *per se* disabled under Listings 1.04, 12.04 and 12.06 because his physical limitations, depression and anxiety were documented in treatment notes. Document No. 14, pp. 6-8. It was not sufficient, however, for Lawrence to simply show that the "overall functional impact of his unlisted impairment or combination of impairments" was equal in severity to that of a Listed Impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To qualify as *per se* disabled, Lawrence needed to show that his impairments were *medically* equivalent to a Listed Impairment. *Id.* This required a showing sufficient to match *all* of the criteria contained within a particular Listing. *Id.* The burden was on Lawrence, and not the Commissioner, to produce evidence

---

completely overlap, consisting of two different ways of framing the same issue. Thus, the Court considers only three distinct issues to be raised in Lawrence's brief.

8

sufficient to satisfy the specific criteria found within the Listing (or Listings) at issue. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

The ALJ specifically evaluated Lawrence's impairments not only under the musculoskeletal and mental criteria identified by Lawrence, but also under the digestive criteria contained within Listing 5.00. R. p. 12. The ALJ observed in his opinion that no treating or examining physician had indicated that Lawrence's impairments were medically equal or equivalent to a Listed Impairment. *Id.* Lawrence advances only a very generalized argument against the ALJ's finding. Document No. 14, pp. 6-8. He does not refer specifically to the criteria found within Listings 1.04, 12.04 and 12.06. *Id.* Given that the ALJ satisfied his duty to articulate a basis for his determination, and because Lawrence provides no coherent basis for impugning that determination, the Court will not disturb the Commissioner's finding that Lawrence's impairments did not meet or medically equal a Listed Impairment. *Poulos*, 474 F.3d at 93.

Lawrence argues that the ALJ's residual functional capacity determination was not "supported by substantial evidence." Document No. 14, pp. 8-13. Specifically, he contends that the ALJ erred in finding that the cumulative effect of his impairments (in the absence of alcohol) would not preclude him from performing work at the light exertional level.[2] *Id.* He attacks the ALJ's

---

[2]The regulations defining the term "light work" provide:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

reliance on a report prepared by Dr. Mohammad Dowlut ("Dr. Dowlut") based on a consultative physical examination performed on April 26, 2005. *Id.*, pp. 11-12. After performing the examination, Dr. Dowlut indicated that Lawrence could frequently lift up to twenty-five pounds and carry up to twenty pounds. R. p. 309. Dr. Dowlut opined that Lawrence could stand, walk, sit, push or pull without limit, and that Lawrence had no additional postural, functional or environmental limitations. R. pp. 309-310. The ALJ specifically referred to Dr. Dowlut's examination report in determining that Lawrence was capable of performing light work. R. p. 13.

Lawrence condemns the ALJ's reliance on a "non-treating source." Document No. 14, p. 12. He points out that the record does not contain evidence of a residual functional capacity assessment completed by a treating source. *Id.*, p. 11. His arguments are plainly without merit. First of all, if Lawrence wanted to present a residual functional capacity assessment prepared by a treating physician, the burden was on *him* to do so during the pendency of the administrative proceedings. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391-392 (6th Cir. 1999). Second, even if Lawrence had produced such an assessment from a treating source, it would have been the prerogative of the ALJ to resolve any conflicts between that assessment and the one provided by Dr. Dowlut.[3] *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505-506 (3d Cir.

---

[3] The Court acknowledges that Dr. Rajesh Subramania ("Dr. Subramania"), a treating physician, opined on two occasions that Lawrence was temporarily disabled. R. pp. 241-244. Because the dates written on the forms completed by Dr. Subramania are illegible, it is not clear whether his opinion of "disability," if credited, would have satisfied the Act's twelve-month durational requirement. *Barnhart v. Walton*, 535 U.S. 212, 214-219, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). In any event, however, a conclusory statement by a treating physician indicating that an individual is "disabled" can never be accorded "controlling weight." *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990). Indeed, some federal courts have opined that unsupported opinions of "disability" are not even "medical opinions" entitled to consideration. *Allen v. Commissioner of Social Security*, 561 F.3d 646, 652 (6th Cir. 2009); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Luce v. Astrue*, 523 F.Supp.2d 922, 936 (S.D.Iowa 2007); *Earl-Buck v. Barnhart*, 414

2009); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Except in unusual circumstances, a residual functional capacity assessment based solely on the report of a *nonexamining* consultant cannot stand if that assessment conflicts with a report supplied by a treating physician. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). The ALJ's residual functional capacity assessment in this case, however, was buttressed by a report provided by an *examining* physician. In the Social Security disability context, courts have recognized that a consultative examiner can sometimes be more objective or impartial than a treating physician. *Smith v. Bowen*, 664 F.Supp. 1165, 1169 (N.D.Ill. 1987). The Court notes that the ALJ's residual functional capacity assessment was significantly more restrictive than that provided by Dr. Dowlut, since it included several postural limitations that had not been identified in Dr. Dowlut's examination report. R. pp. 18, 310. The ALJ's conclusion that Lawrence could perform light work was supported by substantial evidence.

The final issue raised by Lawrence concerns the ALJ's application of the CWAAA. The Commissioner's regulations implementing the CWAAA essentially require that a finding of disability precede a determination as to whether a claimant's alcoholism or drug addiction is "a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). For this reason, the ALJ was required to find Lawrence incapable of engaging in substantial gainful activity before determining whether his alcohol use was "material" to that

---

F.Supp.2d 288, 293 (W.D.N.Y. 2006); *Wheat v. Barnhart*, 318 F.Supp.2d 358, 364, n. 11 (M.D.La. 2004). The ALJ adequately explained his reasons for rejecting Dr. Subramania's opinion. R. p. 19. Lawrence concedes that no treating physician rendered an opinion concerning his specific work-related limitations. Document No. 14, p. 11. Under these circumstances, there is no basis for setting aside the ALJ's residual functional capacity determination.

11

finding. *Brueggemann v. Barnhart*, 348 F.3d 689, 694-695 (8th Cir. 2003). In other words, the regulations required the ALJ to essentially discount the effect of Lawrence's alcohol use while making an initial disability determination, and to reach the issue of materiality only upon a finding of disability. *Bustamante v. Massanari*, 262 F.3d 949, 954-955 (9th Cir. 2001).

In his brief, Lawrence contends that the ALJ failed to make an initial disability determination before addressing the issue of materiality. Document No. 14, p. 14. That contention is belied by the record. The ALJ unambiguously concluded that Lawrence was "disabled" within the meaning of the Act before concluding that an award of benefits was precluded by the CWAAA. R. p. 11. Although Lawrence faults the ALJ for prefacing some of his findings with the phrase "in the absence of alcohol," the ALJ sufficiently articulated his rationale to enable the Court to trace the path of his reasoning. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). The ALJ resolved the first four steps of the sequential evaluation process in Lawrence's favor without regard to whether he was using alcohol. R. pp. 11-20. The materiality determination centered on the fifth step of the process. At the hearing, Montgomery testified that an individual who needed to miss more than fifteen days of work in a given year, or who persistently needed to be "off task" for more than six minutes per hour, would be unable to maintain gainful employment. R. p. 859. The ALJ concluded that Lawrence's alcoholism had resulted in "marked" limitations in his ability to maintain concentration, persistence and pace, thereby necessitating excessive absences and "off task" time.[4]

---

[4] The clarity of the ALJ's reasoning is illustrated by the wording of his thirteenth "finding," which states:
> The claimant's alcohol dependence precludes him from completing a normal workday/work week on a regular and continuing basis due to excessive time off task caused by an inability to concentrate sufficiently and excessive absences caused by hospitalization for detoxification.

R. p. 22. This limitation was not found to have been present "in the absence of alcohol." R. p. 18. For this reason, the ALJ determined that Lawrence would not be statutorily disabled if he were to stop using alcohol. R. p. 22.

The burden was not on the Commissioner to prove materiality. Instead, the burden was on Lawrence to prove that his alcohol use was *not* "a contributing factor material to the determination of disability." *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). Moreover, the Commissioner was entitled to make a well-supported finding of materiality even in the absence of "psychiatric opinion evidence" that Lawrence was disabled *because of* his alcohol use. *McGill v. Commissioner of Social Security*, 288 Fed.Appx. 50, 53 (3d Cir. 2008). In this case, however, the ALJ relied on such "opinion evidence" in making his materiality finding.

Dr. Daniel Palmer ("Dr. Palmer"), a clinical psychologist, performed a consultative psychological evaluation of Lawrence on May 26, 2005. R. p. 311. The evaluation revealed that Lawrence had "marked" limitations in his abilities to understand and remember detailed instructions, carry out detailed instructions, and make judgments involving simple, work-related decisions. R. p. 316. On the portion of the assessment form inquiring as to what medical or clinical finding provided support for the existence of these limitations, Dr. Palmer wrote the phrases "alcohol dependence" and "panic disorder." *Id.* On a separate part of the form, Dr. Palmer noted that these same findings resulted in "marked" limitations in Lawrence's abilities to interact

---

R. p. 24. It is obvious that the ALJ's materiality determination turned on this particular finding.

13

appropriately with co-workers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. *Id.* Dr. Palmer observed that Lawrence's "prognosis for positive change" was "very poor" because of his "chronic alcohol abuse," and that Lawrence was incapable of managing his personal funds "due to his pattern of alcohol abuse." R. p. 314.

Dr. Sharon Becker Tarter ("Dr. Tarter"), a nonexamining medical consultant, opined on June 30, 2005, that Dr. Palmer had overstated Lawrence's nonexertional limitations. R. p. 333. Dr. Tarter believed that Lawrence had only "moderate" limitations, and that he was "able to meet the demands of competitive work on a sustained basis despite the limitations resulting from his impairments." R. pp. 328, 331-332, 334. Her opinion conflicted with that of Dr. Palmer with respect to the issue of disability. The ALJ credited Dr. Palmer's opinion concerning the issue of disability by finding Lawrence to be incapable of engaging in substantial gainful activity. R. p. 21. He also credited the portion of Dr. Palmer's report explaining *why* Lawrence could not engage in substantial gainful activity. R. pp. 21-22. Lawrence points to no evidence which *disproves* the ALJ's materiality finding. Document No. 14, pp. 13-17. Dr. Tarter, who did not believe Lawrence to be disabled in the first place, had no occasion to consider the issue of materiality. Consequently, the ALJ's finding of materiality is "supported by substantial evidence" within the meaning of § 405(g).

## V. CONCLUSION

The Court acknowledges that an administrative law judge evaluating a claim advanced by an

individual afflicted by both exertional and nonexertional limitations must carefully consider the combined effect of both types of limitations when making a residual functional capacity determination. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). A careful review of the record reveals that the ALJ satisfied this duty by fully accounting for all of Lawrence's credibly established limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). The ALJ also provided evidentiary support for his materiality finding. *Sklenar v. Barnhart*, 195 F.Supp.2d 696, 696-705 (W.D.Pa. 2002). The arguments raised in Lawrence's brief are wholly lacking in merit. Accordingly, the administrative decision presently under review will be affirmed. An appropriate order follows.

**AND NOW**, this 15th day of February, 2010, this matter coming before the Court on the Motion for Summary Judgment filed by the Plaintiff (Document No. 13) and the Motion for Summary Judgment filed by the Defendant (Document No. 19), IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment is **DENIED**, that the Defendant's

Motion for Summary Judgment is **GRANTED**, and that the decision of the Commissioner of Social Security is **AFFIRMED**.

BY THE COURT:

*KIM R. GIBSON,*
**UNITED STATES DISTRICT JUDGE**

cc:   All counsel of record